**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Arjona, 25-cv-1497*<br>*Harris, 17-cv-2634*<br>*Wood, 17-cv-4690* | **DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

Plaintiffs Pablo Arjona, Wanda Harris, and Thomas Wood's Opposition to the Motion for Judgment on the Pleadings ("MJOP") filed by Defendants 3M Company and Arizant Healthcare Inc. (together, "3M") argues, among other things, that the Kansas discovery rule should save their lawsuits, which were filed five, twelve, and eight years, respectively, after Plaintiffs were diagnosed with periprosthetic joint infections ("PJI"). Plaintiffs also argue that the doctrine of fraudulent concealment should toll the limitations period and save their claims. Recognizing that they have not properly pled fraudulent concealment, all three Plaintiffs request permission to amend their complaints to add factual allegations to satisfy the pleading standard. Each Plaintiff filed a Proposed Amended Complaint ("PAC") with their Motion to Amend. The PACs demonstrate that granting leave to amend would be futile in these cases

for two reasons. First, the PACs fail to adequately plead fraudulent concealment pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Second, even were fraudulent concealment pled with particularity as required by Rule 9(b), this Court has previously held accrual of the statute of limitation is tolled only until the onset of infection, at which time a plaintiff is on inquiry notice to discover their claims.[1] Because the PACs allege that Plaintiffs were diagnosed with an infection more than four years before filing suit, their claims are untimely as a matter of law, and any attempt to amend would be futile.

Accordingly, 3M's MJOP should be granted as to Arjona, Harris, and Wood, and Plaintiffs' Motions for Leave to Amend Complaint (*Arjona*, 25-cv-1497, Dkt. 14; *Harris*, 17-cv-2634, Dkt. 18; Wood, 17-cv-4690, Dkt. 16) should be denied.

## ARGUMENT

### I. 3M's MJOP Is Neither Procedurally Improper Nor Premature

Plaintiffs' assertion that 3M's MJOP is an "attempt to circumvent" PTO 1, PTO 4, PTO 8, and PTO 22 is unavailing. (*See* Plaintiffs' Joint Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3313, hereinafter "Plaintiffs' Opp.," at 4.) While Plaintiffs note that PTO 1 stays individual discovery, this

---

[1] *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

has no bearing on the MJOP, which is decided solely on the pleadings and requires no discovery. PTOs 4 and 8 have no relevance here. PTO 4 set a schedule of deadlines for pleadings and dispositive motions in 2016, before Plaintiffs' cases were even filed. PTO 8 refers back to those deadlines as they relate to any Rule 12(b)(6) motions directed at the master pleadings. Regarding the dispositive motion schedule in PTO 22, Plaintiffs misinterpret the order. PTO 22 sets deadlines for general causation summary judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, until 3M began filing Rule 12(c) motions directed at facially untimely claims, no Plaintiffs had previously advocated for an interpretation of PTO 22 that precludes all dispositive motion practice, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875 (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, "no scheduling order exists" for their cases (Plaintiffs' Opp. at 7), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1.) The good

cause standard under Local Rule 16.3 is consistent with the good cause standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP and similar motions, because the MDL inventory is littered with cases that are facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferee courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

## II. Plaintiffs' Request for Equal Treatment with Remand Plaintiffs is Unpersuasive.

Equally unpersuasive are Plaintiffs' arguments that the Master Complaint and Short Form Complaints are merely "administrative devices" or that plaintiffs in remanded cases have the unfettered right to amend their pleadings and conduct discovery, and therefore Plaintiffs should have the same opportunities. (*See* Plaintiffs' Opp. at 5-8). By filing their Motions to Amend

and PACs, Plaintiffs have nullified any argument that adjudicating the MJOP unfairly deprives them of an opportunity to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

## III. Plaintiffs' Argument for Judicial Efficiency Does Not Justify Denial of 3M's MJOP.

Plaintiffs' purported concern about judicial efficiency—*i.e.*, that adjudicating the MJOP will open the "floodgates" for additional motion practice (Plaintiffs' Opp. at 8) just reinforces the need for 3M's MJOP. Plaintiffs in this MDL have elected to file hundreds (if not thousands) of cases that are facially time-barred, and Plaintiffs continue to pursue those meritless cases with impunity, unfairly burdening both the Court and 3M. Judicial efficiency is best supported by litigants voluntarily dismissing cases that are facially time-barred (or, even better, never filing them in the first place).

If Plaintiffs in this litigation will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Plaintiffs leave 3M with little choice but to file these motions.

## IV. Plaintiffs Should Be Denied Leave to Amend Because the Proposed Amendments Are Futile

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Plaintiffs assert that 3M "cannot argue futility" because the PAC "contains many more facts and details than the Master Complaint," and "the Defendants never once asserted was deficient." (Memoranda in Support of Motions to Amend, *Arjona*, 25-cv-1497, Dkt. 14 at 8; *Harris*, 17-cv-2634, Dkt. 18 at 8; Wood, 17-cv-4690, Dkt. 16 at 8.) But that argument misses the point. Futility must be determined based on the sufficiency of the allegations in the

PAC and is not dependent upon whether 3M previously challenged the Master Complaint. Here, all three Plaintiffs' PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment for purposes of tolling the statute of limitations; and (2) even if Plaintiffs could take advantage of tolling under the fraudulent concealment doctrine, any tolling would cease upon the date Plaintiff was diagnosed with an infection. Because the PACs plead that Plaintiffs were diagnosed with an infection five, twelve, and eight years before filing suit, respectively, their proposed amendments are futile.[2]

### A. Plaintiffs Fail to Adequately Plead Fraudulent Concealment

A plaintiff seeking to toll the statute of limitations on the basis of fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By

[2] Plaintiffs do not dispute 3M's arguments that their personal injury claims (including product liability claims) are subject to the two-year statute of limitations, Kansas Consumer Protection Act and unjust enrichment claims are subject to the three-year statute of limitations, and breach of warranty claims are subject to the four-year statute of limitations. Kan. Stat. Ann. § 60-513(a); Kan. Stat. Ann. § 60-512; Kan. Stat. Ann. § 84-2-725.

failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

Under Kansas law, the burden on a plaintiff seeking to avoid a statute of limitations defense based on fraudulent concealment is high. Even where the defendant has affirmatively concealed the existence of the cause of action, the plaintiff must plead that they exercised reasonable diligence and, despite such diligence, could not have discovered the existence of the cause of action. *Friends Univ. v. W. R. Grace & Co.*, 227 Kan. 559, 564, 608 P.2d 936, 941 (1980); *see also King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir. 1981)

Here, Plaintiffs' PACs fall short of the pleading standard. As an initial matter, there are no factual allegations in the PACs addressing when and how Plaintiffs discovered 3M's alleged fraud or the misconduct concealing their claims. Arjona's PAC contains general allegations about how he allegedly discovered that a Bair Hugger system was used in his surgery, but he provides no detail about how he allegedly discovered that 3M had engaged in purportedly fraudulent conduct. (*See Arjona* PAC ¶ 40 ("It was not until after the statute of limitations had run that Plaintiff first learned the Bair Hugger was capable of causing an infection[.] . . . Upon learning this, Plaintiff promptly retained counsel, who obtained the medical records confirming the Bair

Hugger was used in Plaintiff's joint replacement surgery.").) Harris and Wood's PACs do not contain any allegations whatsoever suggesting when or how they learned of 3M's alleged fraudulent concealment. (*See generally Harris* PAC; *Wood* PAC.) Without these essential details, Plaintiffs have not pled fraudulent concealment with the requisite particularity. *See Summerhill*, 637 F.3d at 880-81.

Moreover, the allegations in the PACs are insufficient as a matter of law to demonstrate fraudulent concealment. Plaintiffs make essentially the same allegations, accusing 3M of knowing and failing to warn against certain alleged risks associated with the Bair Hugger system and concealing these risks through certain "misrepresentations to the public, the medical community, and the FDA." (*See Arjona* PAC ¶¶ 138, 119-65; *Harris* PAC ¶¶ 138, 119-60; *Wood* PAC ¶¶ 138, 118-63.) Plaintiffs make similar allegations that 3M's alleged affirmative acts prevented Plaintiffs, even in the exercise of due diligence, from discovering the facts necessary to file suit within the applicable statute of limitations period. (*See Arjona* PAC ¶ 164; *Harris* PAC ¶ 162; *Wood* PAC ¶ 160.) But Plaintiffs do not make specific allegations demonstrating: (1) that any particular statement was directed to or heard by Plaintiffs or their medical providers, including the who, what, where, when, and how of any such statement; (2) that 3M knew of Plaintiffs' existence, their injuries, or that a Bair Hugger system was used in their individual surgeries; (3) that 3M took

any specific action designed to deceive any particular Plaintiff or their particular medical providers; (4) or how specifically 3M's statements prevented Plaintiffs from timely filing their claims. Such specific details are essential to pleading fraudulent concealment, and without them, Plaintiffs have not established that fraudulent concealment applies to toll their claims. *See, e.g.*, *In re Urethane Antitrust Litig.*, 235 F.R.D. 507, 517 (D. Kan. 2006) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.2000) ("a complaint alleging fraud must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"); *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) ("“In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud."); *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) ("Allegations of fraudulent concealment, like other types of fraud, must be pleaded with particularity.").

In further support of their allegations of fraudulent concealment, Plaintiffs rely on testimony and other statements purportedly made by 3M representatives during the pendency of this MDL, as well as publications that post-date the formation of the MDL and statements "currently" on 3M's website. (*See, e.g.*, *Arjona* PAC ¶¶ 129-32, 140-41, 143, 145, 149 (discussing MDL testimony); ¶¶ 147-48 (discussing 2018 publication); ¶ 153 (discussing 2019 publication); ¶¶ 139, 142, 144 (discussing content "currently" on 3M's

website); *Harris* PAC ¶¶ 129-32, 140-42, 144, 146, 150 (discussing MDL testimony); ¶¶ 148-49 (discussing 2018 publication); ¶ 154 (discussing 2019 publication); ¶¶ 139, 143, 145 (discussing statements "currently" on 3M's website); *Wood* PAC ¶¶ 128-31, 138, 142, 144, 148 (discussing MDL testimony); ¶¶ 146-47 (discussing 2018 publication); ¶ 152 (discussing 2019 publication); ¶¶ 137, 139, 141, 143 (discussing statements "currently" on 3M's website).) These allegations should be disregarded as irrelevant because the formation of the MDL in December 2015 effectively terminated the possibility that 3M could have fraudulently concealed any cause of action from any plaintiff. *See, e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025). Because Plaintiffs filed their initial complaints after the formation of the MDL (Arjona filed in 2025; Harris and Wood filed in 2017), and therefore must have learned of their causes of action sometime before that, these alleged statements come too late to constitute fraudulent concealment.

For all of these reasons, Plaintiffs fail to adequately plead fraudulent concealment in their PACs. As a result, fraudulent concealment does not operate to save their untimely claims, and the proposed amendments would be futile. The Court should therefore deny Plaintiffs' motions for leave to amend.

### B. Any Alleged Tolling of the Statute of Limitations Ends When Plaintiffs Were First Diagnosed with a PJI

Under Kansas law, even where the fraudulent concealment doctrine applies to toll the statute of limitations, "the limitations period starts when the 'fact of injury' is 'reasonably ascertainable.'" *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996); Kan. Stat. Ann. § 60-513(b); *see also Cline v. S. Star Cent. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203, 1213 (D. Kan. 2005) (quoting *Waite v. Adler*, 239 Kan. 1, 716 P.2d 524, 527 (1986)) (holding claims accrue when "the fraud is discovered" and "a fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered.").

This Court has already concluded in *Pelican*, *Jones*, and *Skinner* that the onset of a plaintiff's infection is sufficient to put a plaintiff on inquiry notice to discover their cause of action. In *Pelican*, for example, the Court applied Louisiana law and found that the statute of limitations began to run after the first of the plaintiff's revision surgeries, noting that plaintiff "could have requested and reviewed his medical records at any time after he developed a [PJI] and underwent, in June 2016, the first of five revision surgeries." *Pelican*, No. 23-cv-1818, Dkt. 136 at 5; *see also Jones v. 3M Company*, et al., No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (reaching the same conclusion). In *Skinner*, the Court applied Iowa law, finding that the statute of limitations began to run upon diagnosis of the infection, reasoning that the plaintiff was on inquiry

notice because "[a]t any time after he was diagnosed with a [PJI] in March 2012, [Skinner] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers." *Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 at 6-7 (Sept. 12, 2025).

The same reasoning applies here with respect to fraudulent concealment. At the time Plaintiffs were first diagnosed with a PJI, they could have discovered their causes of action through reasonable diligence. Specifically, they could have requested their medical records and obtained medical and legal assistance to evaluate the cause of their infections. Arjona was first diagnosed with an infection in April 2020 and he underwent several additional procedures that year. (*Arjona* PAC ¶¶ 31-32.) Harris was first treated for her infection in November 2005. (*Harris* PAC ¶¶ 35-37.) Wood was first treated for his infection in April 2009. (*Wood* PAC ¶ 34-37.) Nevertheless, Arjona waited over five years to file his initial complaint, Harris waited over twelve years, and Wood waited over eight and a half years. Plaintiffs have not alleged facts to establish that they acted with due diligence, nor do they explain how any alleged fraudulent concealment prevented them from timely filing their complaints. Any tolling based on fraudulent concealment would have ended when Plaintiffs were diagnosed with their infections. For each Plaintiff, that occurred well outside the limitations period. As a result, Plaintiffs' claims are

untimely as a matter of law, and any attempt to amend their complaints would be futile.

## V. Kansas Discovery Rule Requires Only Reasonable Awareness of Cause, Not Precise Knowledge of Defendant's Specific Wrongdoing.

Contrary to Plaintiffs' claims about the Kansas discovery rule, (*see* Plaintiffs' Opp. at 9-11), Kansas does not require absolute knowledge of the defendant's specific negligent act or product involvement to trigger the statute of limitations. Rather, accrual occurs when a plaintiff, through reasonable diligence, should have discovered sufficient facts suggesting a causal connection between the injury and potential wrongful conduct, not necessarily the precise mechanism or identity of the product responsible. *See*, *e.g.*, *Davidson v. Denning*, 259 Kan. 659, 675, 914 P.2d 936, 946 (1996) ("Inherent in 'to ascertain' is 'to investigate.'"); *see also N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 630 (10th Cir. 2008) ("The phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the [injury] and its wrongful causation.") (internal quotation omitted). Kansas courts have made clear that it is enough for a plaintiff to suspect a link between their injury and possible wrongdoing. *McCarthy v. Peterie*, 1998 WL 36035425, at *4 (Kan Ct. App. Aug. 21, 1998) (quoting *Kelley v. Barnett*, 23 Kan. App. 2d 564, 932 P.2d 471 (1997)) ("If plaintiffs were allowed to wait to commence suit until directly confronted with

evidence of negligence, the statute of limitations would almost never begin to run.”).

Here, as noted above, this Court has already concluded in *Pelican*, *Jones*, and *Skinner* that the onset of a plaintiff's infection is sufficient to put a plaintiff on inquiry notice to discover their cause of action. *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025). As such, once a Plaintiff was diagnosed with an infection, the statute of limitations began to run because the plaintiff was on inquiry notice and could have reasonably investigated the cause of their injury.

The analysis of fraudulent concealment applies equally to the issue of the discovery rule. The discovery rule and fraudulent concealment both hinge on whether plaintiffs exercised reasonable diligence to uncover the basis for their claims. At the time Plaintiffs were first diagnosed with a PJI, they had the opportunity and means to investigate the cause of their infections, including requesting medical records and seeking medical or legal advice. However, each Plaintiff waited well beyond the applicable limitations periods after their diagnoses to investigate. As such, the discovery rule does not save their claims, because the limitations period began to run at the time of diagnosis, and Plaintiffs' subsequent delay in investigating and filing does not extend or renew the statute of limitations. *Friends Univ. v. W. R. Grace & Co.*,

227 Kan. 559, 563, 608 P.2d 936, 940 (1980) (quoting *Cooksey v. Jones*, 184 Kan. 300, 303, 336 P.2d 422, 424 (1959),) ("a reasonable investigation would have shown all of the reasons therefor and plaintiffs cannot delay the running of the statute of limitations by merely alleging that they only discovered the defective machinery.").

Plaintiffs' reliance on *Hecht v. First Nat'l Bank & Trust Co.*, 208 Kan. 84 (1971), is misplaced. (See Plaintiffs' Opp. at 11.) In *Hecht*, the plaintiff delayed investigating her injury due to repeated assurances from her physicians that her skin condition was a normal, harmless side effect of treatment and would resolve without intervention. *Hecht*, 208 Kan. at 87-88 (1971). The Kansas Supreme Court found these reassurances critical, as they prevented the plaintiff from reasonably suspecting wrongdoing and postponed the accrual of her claim. *Id*. In contrast, Plaintiffs here do not allege that their physicians provided similar assurances about their infections or advised them that their injuries were temporary or unrelated to potential negligence. (*See generally Arjona* PAC; *Harris* PAC; *Wood* PAC.) Without such medical representations, Plaintiffs were in a position to promptly investigate the cause of their infections upon diagnosis, and there is no basis for tolling the limitations period under the reasoning in *Hecht*. Accordingly, Plaintiffs' claims are untimely as a matter of law.

## VI. Questions Related to Statute of Limitations and Fraudulent Concealment May Be Resolved by the Court.

Plaintiffs further argue that questions related to the statute of limitations and fraudulent concealment must be decided by a jury. (*See* Plaintiffs' Opp. at 12.) To support this contention, Plaintiffs rely on *Olson v. State Highway Comm'n of Kansas*. (*See* Plaintiffs' Opp. at 12.) However, *Olson* is distinguishable because it involved a latent injury where the plaintiffs did not know, and could not have reasonably known, the existence or cause of their injury until well after the initial wrongful act. *Olson v. State Highway Comm'n of Kansas*, 235 Kan. 20, 26, 679 P.2d 167, 173 (1984). In *Olson*, the plaintiffs' damages from road construction only became apparent years later, making the determination of when the cause of action accrued a question of fact. *Id.*

By contrast, in these cases, the date on which Plaintiffs were diagnosed with infections is clear, documented, and even alleged in Plaintiffs' Complaints. This means Plaintiffs were immediately aware of the existence of an injury and could, through reasonable diligence, begin to investigate potential causes—including whether their infections were related to the surgical procedure or a device used during surgery. The presence of a definite diagnosis distinguishes the present situation from the latent injury scenario in *Olson* and supports the position that questions regarding the statute of limitations need not be left for a jury to decide.

Indeed, numerous courts applying Kansas law have dismissed claims based on statute of limitations defenses at the motion-to-dismiss phase. *See PHH Mortgage Corp. v. Stuber*, 766 F. Supp.3d 1162, 1169-71 (D. Kan. 2025) (finding claims time-barred at the motion to dismiss phase and expressly stating that "[a] court properly may resolve statute of limitations questions on a Fed. R. Civ. P. 12(b) motion"); *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1232-33 (D. Kan. 2016) (applying Kan. Stat. Ann. § 60-513 and finding plaintiff's claims time-barred at motion to dismiss phase); *Underhill v. Thompson*, 158 P.3d 987, 992-93 (Kan. Ct. App. 2007) (dismissing claim as time-barred and explaining that "[w]hen an action is time barred on its fact, it must be dismissed unless the statute of limitations was tolled"); *Whye v. The City Council for the City of Topeka*, 2004 WL 422045, at *2-3 (Kan. Ct. App. Mar. 5, 2004) (affirming trial court's grant of a motion to dismiss because the plaintiff's claims were time-barred). This Court should do the same.

## CONCLUSION

For the foregoing reasons and those outlined in 3M's Motion for Judgment on the Pleadings, Arjona's, Harris's, and Wood's claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted as to Plaintiff Pablo Arjona, Plaintiff Wanda Harris, and Plaintiff Thomas Wood. In addition, Plaintiffs' Motions for Leave to Amend should be denied.

Respectfully submitted,

Date: February 12, 2026

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***